CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 28 2019
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| VICKI J. GOINS, | ) |
| Plaintiff, | ) Case No. 4:17-cv-00037 |
| v. | ) **MEMORANDUM OPINION** |
| NANCY BERRYHILL, Acting Commissioner | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |
| Defendant. | ) |

Before me is the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending that I deny Plaintiff's Motion for Summary Judgment [ECF No. 14], grant the Commissioner's Motion for Summary Judgment [ECF No. 18], and affirm the Commissioner's decision. The R&R was filed on August 31, 2018 [ECF No. 22], and Plaintiff filed her objections on September 14 [ECF No. 23]. The Commissioner responded [ECF No. 24], and the matter is now ripe for review. See Fed. R. Civ. P. 72(b). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's objections and grant the Commissioner's Motion for Summary Judgment.

### I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On December 30, 2015, Plaintiff Vicki J. Goins ("Plaintiff") filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), and supplemental security income pursuant to Title XVI of the Act. See 42 U.S.C. §§ 401–33; 1381–1383f (2018). (See R. 63–75.) In her applications, Plaintiff alleged that she had been disabled since May 1, 2013, due to a combination of migraines, high blood pressure, idiopathic peripheral neuropathy, osteoarthritis, atrial fibrillation, anxiety, depression, and acid reflux. (Id.)

The Commissioner denied Plaintiff's claims initially on March 16, 2016 (R. 68, 75), and again upon reconsideration on April 12, 2016. (See R. 87, 101.)

Plaintiff requested a hearing before an Administrative Law Judge and on October 4, 2016, Plaintiff appeared with her attorney before Administrative Law Judge Brian P. Kilbane ("the ALJ"). (R. 37–70.) Both Plaintiff and a vocational expert, James Ginard, testified. (Id.) In a written decision dated November 28, 2016, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (See generally R. 21–36.) The ALJ found that Plaintiff suffered from a "history of congestive heart failure, status-post pacemaker placement, hypertension, peripheral neuropathy, and chronic atrial fibrillation," which qualified as severe impairments. (R. 22–26 (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)).) The ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, & 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that she could

> occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance, occasionally stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, and poor ventilation, as well as workplace hazards such as unprotected heights and dangerous moving machinery.

(R. 27.) The ALJ concluded that, based on his determination of her RFC, Plaintiff could perform her past relevant work as a cosmetologist. (R. 34–36 (citing 20 C.F.R. §§ 404.1565 & 416.965.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R.

36.) The Appeals Council denied Plaintiff's request for review (R. 1–3), and the decision of the ALJ became the final decision of the Commissioner on March 29, 2017. (Id.)

On May 22, 2017, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner. (Compl. [ECF No. 2].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration. On December 6, Plaintiff filed a Motion for Summary Judgment [ECF No. 14]. The Commissioner filed a Motion for Summary Judgment on February 5, 2018 [ECF No. 18]. On August 31, Judge Hoppe filed a Report and Recommendation ("R&R"), recommending that I deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the Commissioner. (R&R, Aug. 31, 2018 [ECF No. 22].) On September 14, Plaintiff filed timely objections to the R&R. (Pl.'s Obj., Sept. 14, 2018 [ECF No. 23].) The Commissioner responded on September 25 [ECF No. 24], so the matter is now ripe for review.

## II.     STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2014). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642. In reviewing the evidence, I may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary," Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589), or the secretary's designate, the ALJ, Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

### III. DISCUSSION

Plaintiff has lodged two objections: first, the Magistrate Judge erred in concluding that the ALJ considered Plaintiff's credibility regarding the limiting effects of her conditions; and second, the Magistrate Judge erred in concluding that the ALJ properly considered the opinions of Plaintiff's treating physician. Her objections will be addressed in turn.

First, it is well-settled that the ALJ is tasked with, among other things, making credibility determinations. Under the applicable regulations:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological

> abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*.

Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b) (emphasis added)). "Therefore, for the pain to be found disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some severity, but *the pain the claimant alleges she suffers*." Id. (emphasis in original).

The step one analysis "does not, as the regulation is careful to emphasize, entail a determination of the 'intensity, persistence, or functionally limiting effects' of the claimant's asserted pain." Id. (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). Plaintiff's claimed pain is not directly at issue at this stage; "the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." Id. (citing 42 U.S.C. § 1382c(a)(3)(A)). In other words, taking a claimant's allegations of pain as true, the ALJ must determine whether she has a medical condition that reasonably *could* cause the pain, "in the amount and degree," she alleges. Id.

"It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(2)). Under the regulations,

> this evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissue, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

> activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations omitted). In other words, after determining that a claimant has a medical condition that reasonably could cause the pain "in the amount and degree" she alleges, the ALJ must determine, based on the available evidence, whether a claimant *actually suffers* to the degree she claims.

Plaintiff does not take issue with the ALJ's determination at Step One; she contends that the ALJ improperly concluded, at Step Two, that her conditions were inconsistent with the disabling pain she alleged. First, she contends the Magistrate Judge erred by "punishing" her for "not mentioning each and every symptom at every appointment but yet when [P]laintiff points to the appointments where she did make complaints of her symptoms, her complaints are disregarded by the Report and Recommendation as inconsequential." (Pl.'s Obj. og. 2.) Plaintiff's argument misstates the R&R and the Magistrate Judge's recommendation. He concluded that Plaintiff's inconsistent reporting of pain, *among other things*, was substantial evidence to support the ALJ's credibility determination. He also correctly stated that the lack of "objective" medical evidence of pain is another piece of evidence that supports the ALJ's conclusion. See id. It is not inconsistent to note that Plaintiff's subjective allegations of pain are not objective medical evidence of pain and that she failed to consistently allege them, and it is not inconsistent to note that, simply because Plaintiff's subjective complaints are written down by her physician that such a notation is not objective medical evidence. See Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996).

Plaintiff next objects to the Magistrate Judge's conclusion that the ALJ appropriately considered her daily activities. "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." Woods v Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing Brown v. Commissioner, 873 F.3d 251, 263 (4th Cir.

2017)). But the Record is clear that the ALJ *did* consider the extent to which Plaintiff can perform certain activities:

> [Plaintiff] was able to shop, drive, follow a recipe, and manage her finances.
> . . .
> Since 2013, she feels her symptoms have become worse and she alleged a daily pain level of 9/10. She said she washes dishes and does light housework such as dusting, but has one day a week when unable to do these tasks. She said after standing for 2 or 3 minutes to was dishes she has to take a break to sit down for 15 to 30 minutes. If standing at hearing [*sic*] she could only stand 10 to 15 minutes. Sitting is limited to 10 to 15 minutes. She lies down 2 to 3 times a day for about an hour but on bad days lies down all day, only getting up to go to the bathroom. She has no friends that come to visit or to help with household chores.

(R. 28.) Unlike in Woods, Plaintiff has not pointed to any evidence in the Record that the ALJ *failed* to consider. See Woods, 888 F.3d at 695–96 (noting that, although the ALJ stated that Woods could "cook" and "shop," "the ALJ did not consider Woods's statements that she cannot button her clothes, has trouble drying herself after bathing, and sometimes needs help holding a hairdryer; that she can prepare simple meals but has trouble cutting, chopping, dicing, and holding silverware or cups; it takes her all day to do laundry; she shops only for necessities, and that process takes longer than normal; when she reads to her grandchildren, they have to turn the pages because of severe pain in her hands; and that some days, she spends the entire day on the couch."); see also Brown, 873 F.3d at 263 ("The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week."). Here, the ALJ considered Plaintiff's statements about what she can and cannot do, as well as the limited ability she has to perform those daily activities.

Plaintiff stated that she could "shop" and "drive," and failed to limit those activities in any way. (See, e.g., R. 94.) The ALJ considered all the evidence in the Record, and doing so was not in error.

Finally, Plaintiff argues the ALJ erred in regarding Plaintiff's treatment as "routine and conservative." She alleges the ALJ "did not build a logical bridge between the treatment plaintiff received and his determination that this treatment undermined her allegations." (Pl.'s Obj. pg. 3.) It is well settled that conservative treatment is one of several valid reasons to discount a claimant's subjective statements regarding allegedly debilitating pain. See Stitely v. Colvin, 621 F. App'x 148, 151 (4th Cir. 2015) (per curiam) (unpublished); see also Smith v. Colvin, 756 F.3d 621, 626 (8th Cir. 2014); Wall v. Astrue, 561 F.3d 1048, 1068–69 (10th Cir. 2009); Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008). As is plainly evident from his written decision, Plaintiff's conservative treatments are but one of several properly considered factors when determining, under Step Two, whether Plaintiff's conditions could reasonably be expected to produce the pain she alleges. The logical bridge Plaintiff complains is lacking is, in fact, his belief that her treatment was routine and conservative. Plaintiff takes no issue with the characterization of her treatment as routine and conservative, and her first objection will be overruled.

Plaintiff next objects to the ALJ's decision to give the opinion of her treating physician, Dr. Lewis, less than controlling weight.

A treating physician's opinion is traditionally afforded "controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). When there is "persuasive contrary evidence," and if the ALJ gives "good reasons" that are supported by the record, the ALJ may give a treating physician's opinion less

weight. Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Among the factors that may weigh in the decision whether or not to afford a treating physician's opinion controlling weight are the "[l]ength of the treatment relationship" and the "[n]ature and extent of the treatment relationship." 20 C.F.R. §§ 404.1527(c)(i)–(ii), 416.927(c)(i)–(ii) (2018). The ALJ may also consider the physician's explanation for her conclusion and whether her opinion pertains to her area of specialty. See Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017).

Plaintiff's scattershot objection is difficult to comprehend, but she appears to disagree with every paragraph of the R&R. She contends the ALJ's decision is "not supported by substantial evidence," but makes no effort to discuss, in any meaningful fashion, the decision of the ALJ. For example, she argues:

> The reasons given by the ALJ in support of his decision to give lesser weight to the opinions of Dr. Lewis are not supported by substantial evidence. (R. 34.) Consequently, the Report and Recommendation erred in concluding substantial evidence supports the ALJ's decision to giver lesser weight to the opinions of Dr. Lewis.

(Pl.'s Obj. pg. 4.) Plaintiff's argument appears to be nothing more than a conclusory statement followed the argument that the R&R erred by not accepting her conclusory statement. At best, her objection is nothing more than a restatement of the argument she made before the Magistrate Judge. As I have repeatedly held, that is no objection.

The objection requirement set forth in Federal Rule of Civil Procedure 72(b) is designed to "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–

48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or the courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from the magistrate judges would be undermined.

Id.

As explained in prior decisions, Plaintiff's general objection, which is no more than an attempt to have "two bites at the apple," is improper:

> The issues that Plaintiff raises in her general objection have already been addressed by Magistrate Judge [Hoppe] when they were before him in Plaintiff's summary judgment brief. Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection "make[s] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

Veney v. Astrue, 539 F. Supp. 2d 841, 845–46 (W.D. Va. 2008) (quoting Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)); see also Norman v. Berryhill, No. 4:17cv00019, 2018 WL 5848989, at *3 (W.D. Va. Nov. 8, 2018). This reason alone justifies overruling her objections. Essentially, by restating her grounds for remand as an Objection to the R&R, Plaintiff's sole argument for rejecting the Magistrate Judge's recommendation is, "I disagree with him." While that may be so, it is not a legal basis for rejecting Judge Hoppe's

recommendation.[1] Accord Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."), aff'd 373 F. App'x 346 (4th Cir.), cert. denied 131 S. Ct. 210 (2010). Her objection will be overruled.

## IV. CONCLUSION

Plaintiff's objections are not supported by the record or relevant law and will be overruled. I have reviewed the remainder of the record for clear error. Finding none, I will adopt the R&R, deny Plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the final decision of the Commissioner.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

**ENTERED** this 28th day of March, 2019.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] It is settled law that an objection which merely restates that basis set forth before the Magistrate Judge is nothing more than a general objection, which is the same as no objection at all. "[B]ecause Plaintiff's re-filed brief constitutes, at most, a general objection to the Report, and '[a] general objection . . . has the same effects as would a failure to object,' no part of the Report is subject to this Court's *de novo* review." Veney, 539 F. Supp. 2d at 846 (quoting Howard v. Sec'y of Health and Human Services., 932 F.2d 505, 509 (6th Cir. 1991)).